```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION


ROBERTO GARZA IBARRA,              §
                                   §
          Plaintiff,               §
                                   §
v.                                 §    CIVIL ACTION NO. H-06-0648
                                   §
C. GUADALUPE YADIRA                §
QUINTANILLA GARCIA,                §
                                   §
          Defendant.               §
```

### MEMORANDUM OPINION AND ORDER

Plaintiff, Robert Garza Ibarra, brought this action against defendant, C. Guadalupe Yadira Quintanilla Garcia, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and the International Child Abduction Remedies Act, 42 U.S.C.A. § 11601, et seq., seeking the return of his son, Roberto Garza Quintanilla, from the United States. The case was tried to the court, and each party has submitted two post-trial briefs. After considering the law and the evidence the court issues this Memorandum Opinion and Order pursuant to Fed. R. Civ. P. 52(a).

### I. Background

Plaintiff and defendant are citizens of Mexico. They were married in 1999 in Monterrey, Nuevo Leon, Mexico. Their son, Roberto Garza Quintanilla, was born the following year. In March of 2004 plaintiff and defendant were divorced by mutual consent in Monterrey, Mexico. The minor child continued to reside with the defendant in Monterrey until September of 2004 when the defendant

took him to the United States. The child now resides with defendant and her new husband in Houston.

Plaintiff contends that defendant abducted the minor child from Mexico without plaintiff's knowledge or consent and that defendant's removal of the child from Mexico violated plaintiff's right of custody of the child under the Mexican divorce decree. Defendant contends that the Hague Convention affords plaintiff no right to the return of the child. Defendant also contends that plaintiff's delay in filing this action bars his remedy and that the child would be placed in grave risk of physical and psychological harm if the court required him to return to Mexico and live with plaintiff.

## II. Legal Standards

The Hague Convention is an international treaty, to which the United States is a signatory. "The Convention is designed to secure the prompt return of children who have been abducted from their country of habitual residence or wrongfully retained outside that country." (Oct. 30, 1985, transmittal letter from President Ronald Reagan to the United States Senate, reprinted at 51 Fed. Reg. 10,495 (March 26, 1986)) The Hague Convention operates to restore the status quo as it existed before the wrongful removal of a child by establishing procedures for the return to the child's country of "habitual residence" before the removal. (Hague Convention, arts. 3, 12, reprinted at 51 Fed. Reg. 10498-99)

The United States implemented the Hague Convention by enacting the International Child Abduction Remedies Act ("ICARA"), 42

U.S.C.A. §§ 11601-11610.  The ICARA grants jurisdiction to United States courts to determine the merits of an abduction claim under the Hague Convention, but the ICARA does not grant jurisdiction over the merits of an underlying custody dispute. England v. England, 234 F.3d 268, 271 (5th Cir. 2000).  To be entitled to the return of a child under the Hague Convention the plaintiff must show

> (1) that he had "rights of custody" of the minor child "either jointly or alone";
>
> (2) that the plaintiff was "actually exercis[ing]" those rights "either jointly or alone" when the minor child was removed;
>
> (3) that the minor child was removed from his habitual residence; and
>
> (4) that the removal of the minor child breached plaintiff's "rights of custody."

Hague Convention arts. 3, 4, and 13(a).  Article 5 of the Hague Convention distinguishes between "rights of custody" and "rights of access" as follows:

> (a) "Rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence.
>
> (b) "Rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

If the plaintiff establishes these elements, the court must return the child unless

> (1) the action to seek the return of the child was commenced more than a year after the wrongful removal and the child is settled in his new environment, Hague Convention art. 12, or

>    (2) "there is a grave risk that the return would expose the child to physical or psychological harm or place the child in an intolerable situation."  Hague Convention art. 13(b).

The defendant bears the burden of proof on these defenses, the first by a preponderance of the evidence and the second by "clear and convincing evidence."  42 U.S.C. § 11603(e)(2).  Even if a defense applies, "a federal court has 'and should use when appropriate' the discretion to return the child to his or her place of habitual residence 'if return would further the aims of the Convention.'"  <u>England</u>, 234 F.3d at 271, citing <u>Friedrich v. Friedrich</u>, 78 F.3d 1060, 1067 (6th Cir. 1996).

### III.  <u>Analysis</u>

#### A.  Plaintiff's Claim for Return of the Child

Both parties argue that the rights to custody of the minor child are established by their Mexican divorce decree.  In the divorce decree the parties agreed to be bound by certain clauses, three of which are material to this action.  The First clause provides that "both [parties] will continue executing their parental authority over [the child], who will be under [defendant's] custody [during and after the divorce proceeding]."[1]

---

[1] The Mexican divorce decree is Plaintiff's Exhibit 2; plaintiff's English translation is also labeled as Plaintiff's Exhibit 2, while defendant's English translation of the decree is labeled as Defendant's Exhibit K.  In Spanish the First clause of the decree states that the plaintiff and defendant will continue to exercise "la patria potestad" over the minor child.  Plaintiff's Spanish language expert testified that this term means that both parties "will continue executing their parental <u>authority</u> over the minor," Plaintiff's Exhibit 2, English translation, at page 3 (emphasis added), while defendant's expert testified that the term
(continued...)

The Second clause provides that the child will reside with the defendant at 1310 Xochimilco Street in Monterrey, Nuevo Leon, Mexico; that the defendant will provide plaintiff with written notice of any change of address; and that "any future residence of [defendant and the child] shall be located within the metropolitan area of Monterrey, N.L."[2]  The Third clause affords plaintiff visitation rights with the child.[3]

---

[1](...continued)
means that both "will continue exercising their parental <u>rights</u> over the minor." (Defendant's Exhibit K, page 4 (emphasis added))  The court views the difference in defining "la patria potestad" between "parental authority" as urged by the plaintiff and "parental rights" as urged by the defendant as an immaterial distinction.

[2]The parties also disagree about the English translation of the last sentence of the Second clause of the divorce decree, which states in Spanish that the defendant understands that any future residence of defendant and the minor child "deberá ser dentro del área Metropolitana de Monterrey N.L."  Plaintiff argues that the word "deberá" means that "[defendant] and her minor child <u>shall</u> be located within the metropolitan area of Monterrey, N.L."  Defendant originally argued that the quoted language from the divorce decree only "recommends" that the defendant and the child remain in Monterrey.  (Defendant's Statement of Support of Retaining Possession of Child, Docket Entry No. 6, at page 1)  At trial defendant's Spanish language expert testified, however, that this language means that "[defendant] and the child <u>should</u> be within the metropolitan area of Monterrey, N.L."  (Defendant's Exhibit K (emphasis added)  Although defendant's expert testified that the imperative nature of "deberá" could have been made more manifest in the divorce decree, he did not dispute that "shall" was a possible, logical meaning of the word.  The court concludes that there is no significant distinction between the two experts' interpretations, and that the Second clause of the divorce decree required defendant and the minor child to remain within the metropolitan area of Monterrey.  Under either interpretation the quoted language from the Second clause of the divorce decree is an imperative, not a mere suggestion or recommendation.

[3]<u>Id.</u>

The parties' principal dispute is whether the Mexican divorce decree provides plaintiff with a right of custody.[4] The plaintiff's principal argument in support of a right of custody is based on his interpretation of his right of "la patria potestad" under Mexican law. Plaintiff explains that article 414 of the Civil Code of Nuevo Leon states that "[t]he rights and obligations of the family ("la patria potestad") is exercised by both the father and the mother."[5] Article 417 states that when the parents have become separated "both parents will exercise the same rights and obligations of the family (la patria potestad), but it shall be resolved by mutual agreement pertaining to the exercise of custody."[6] Article 415 provides that "[the parent] who exercises possession of the child has the obligation to respect, obtain and permit coexistence with [the parent] whom does not possess the right of possession but has the patria potestad."[7] Plaintiff argues that "[t]he patria potestad in Mexico, in and of itself, without any judicial modification of its rights thereof, is sufficient to confer 'rights of custody' within the meaning of . . . article 5 of the Hague Convention. . . ."[8]

---

[4] The evidence is undisputed that Monterrey, Mexico, was the habitual residence of the minor child.

[5] Plaintiff's Exhibit 3.

[6] Id.

[7] Id.

[8] Plaintiff's Second Post-Trial Brief, Docket Entry No. 25, at pages 4-5.

The court is not persuaded by this argument.  The parties' divorce decree controls this issue.  Although the decree recognized the parties' rights of patria potestad, it awarded defendant custody of the child and only awarded plaintiff rights to visit the child.  Plaintiff, who is a Mexican attorney, testified at trial that "the patria potestad is the rights that the parents assume for the child because he is a minor.  And the right of custody that I had with the minor, I left that to the mother."  To the extent that Mexican law of patria potestad afforded plaintiff any rights of custody of the child, plaintiff relinquished such rights in the agreed divorce decree.  When plaintiff has possession of the child pursuant to the visitation rights awarded him in the divorce decree he may exercise his remaining rights of patria potestad over the child.  The evidence at trial also showed that defendant, not plaintiff, exercised custody over the minor child, while plaintiff only exercised the visitation rights afforded him by the decree.

Because the plaintiff did not have the right of custody over the minor child, either jointly or alone, he has failed to satisfy the principal element of his return claim under the Hague Convention.  See Gonzalez v. Gutierrez, 311 F.3d 942, 954 (9th Cir. 2002).  Because defendant's removal of the child did not breach the plaintiff's "rights of custody," the plaintiff is not entitled to the return of the child.

The court recognizes that defendant violated the prohibition against removing the child from Monterrey.  A body of case law has

-7-

developed over statutes and divorce decrees that provide parents with a "ne exeat" right, which gives a parent a veto over the right of the other parent to determine the child's place of residence.[9] Plaintiff argues that "[t]he geographical restriction found in the Divorce Decree affords plaintiff . . . the equivalent of the ne exeat right. . . ."[10]  The court disagrees.  The divorce decree affords no such right to plaintiff, it merely imposes an obligation on defendant not to remove the child from Monterrey.  To the extent that the defendant's removal of the child to the United States interfered with plaintiff's right of access, defendant may have violated the divorce decree.  Although plaintiff may have a remedy under Mexican law,[11] the Hague Convention, "however, does not provide for the return of [the child] as a remedy for that violation."  Gonzalez, 311 F.3d at 950.

**B.   Defendant's Defenses to Plaintiff's Claim**

   1.   Article 12 of the Hague Convention

The parties have stipulated that the minor child has resided in Houston since October of 2004 and that he is now settled in his new environment.  The child was removed by the defendant from

---

[9]See, e.g., Furnes v. Reeves, 362 F.3d 702 (11th Cir. 2004); Croll v. Croll, 229 F.3d 133 (2d Cir. 2000); Gonzalez, 311 F.3d at 949.

[10]Plaintiff's Second Post-Trial Brief, Docket Entry No. 25, at page 11.

[11]See id. at pages 1-2.

Monterrey on September 4, 2004. Since the plaintiff did not file this action until February 28, 2006, it was commenced more than a year after the removal. The contested issue for a defense under Article 12 of the Hague Convention is whether plaintiff has established a valid excuse for that delay. The plaintiff testified that on September 6, 2004, when he first realized the child was no longer in Monterrey, he searched for the defendant in Mexico by contacting her family, Mexican utilities and registries, and that he contacted various Mexican authorities in an effort to locate the child. Not until April or May of 2005 were plaintiff and his brother able, by chance, to locate the child in Houston. The defendant presented no evidence to the contrary, and based on the parties' testimony the court is persuaded that defendant attempted to keep the child's location secret from plaintiff.

   The court concludes that under these facts the doctrine of equitable tolling applies. See Furnes v. Reeves, 362 F.3d at 723. A parent, such as the defendant in this case, who wrongfully removes a child from his habitual residence should not be rewarded by creating a possible defense to her conduct. See id. The court concludes that the one-year limitations period began when the plaintiff, after making reasonable efforts to locate his son, finally found him in April or May of 2005. Since that date is within one year of the filing of this action, the defendant has not satisfied her burden of proof under Article 12 of the Hague Convention.

2. <u>Article 13(b) of the Hague Convention</u>

To meet her burden of defense under Article 13(b) of the Hague Convention defendant must show by clear and convincing evidence that there is a grave risk that return to Mexico would expose the minor child to physical or psychological harm or place the child in an intolerable situation.  Defendant testified that plaintiff abused her physically and emotionally while in Mexico and failed to support her and the child, but there was no evidence that the plaintiff ever physically abused the child.  The court concludes that the defendant has failed to establish by clear and convincing evidence that the return of the minor child to his father in Mexico would expose the child to physical or psychological harm or place him in an intolerable situation.  Her defense under Article 13(b) of the Hague Convention therefore fails.

## IV.  **Conclusion and Order**

The court concludes that plaintiff has failed to establish by a preponderance of the evidence the elements of his abduction claim under the Hague Convention, and that defendant has not established the applicability of either of her asserted defenses.  The court will enter judgment that the child not be returned to plaintiff.

**SIGNED** at Houston, Texas, on this 8th day of February, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE